FILED
2013 Jan-28  AM 09:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| SHERRY A. JONES, | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-11-S-3772-NE |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Sherry Jones commenced this action on October 28, 2011, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards.  Specifically, claimant asserts that the ALJ improperly evaluated her obesity, that the ALJ's credibility finding was not based on substantial evidence, and that the ALJ improperly failed to consider certain medical source opinions and their effect on her residual functional capacity.  Upon review of the record, the court concludes these contentions are without merit.

## A.   Obesity

Claimant first contends that the ALJ failed to consider her obesity as a severe impairment, as claimant alleges was required by Social Security Ruling 02-01p.

There appears to be no dispute that claimant is obese.  Thus, the ALJ was required to evaluate the effect of claimant's obesity on her residual functional capacity in accordance with Social Security Ruling 02-1p, which states the following:

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balancing, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

2

The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.

An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.

The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

For a child applying for benefits under title XVI, we may evaluate the functional consequences of obesity (either alone or in combination with other impairments) to decide if the child's impairment(s) functionally equals the listings. For example, the functional limitations imposed by obesity, by itself or in combination with another impairment(s), may establish an extreme limitation in one domain of functioning (*e.g.*, Moving about and manipulating objects) or marked limitations in two domains (*e.g.*, Moving about and manipulating objects and Caring for yourself).

As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental

limitations.

SSR 02-1P, 2000 WL 628049, at *6-7.  That ruling does *not* require, as claimant suggests, that anytime a person is obese, her obesity must be considered a severe impairment.  Instead, the ruling only requires that the effects of obesity be considered in combination with claimant's other impairments.  An impairment will be considered "severe" only if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

The administrative decision is internally inconsistent with regard to the ALJ's treatment of claimant's obesity.  When listing claimant's severe impairments, the ALJ included only pulmonary hypertension and diabetes mellitus, not obesity.  The ALJ did not even list obesity as one of claimant's "non-severe" impairments.[1]  Even so, later in the decision, the ALJ stated:

> The record shows the claimant is obese, with a weight of 193 pounds reported in July 2010.  While the claimant has this *severe* impairment, the record is inconsistent with showing it has impacted on her musculoskeletal system or general health as to cause her treating physicians to diagnose her with impairments secondary to or in combination with obesity.  Moreover, at the hearing, the claimant did not allege functional limitations due to her weight (SSR 02-01p).[2]

The ALJ also stated, "Based on the record as a whole, the undersigned finds that *even*

---

[1] Tr. 18 ("The claimant has the following severe impairments:  pulmonary hypertension and diabetes mellitus.  (20 CFR 404.1520(c) and 416.920(c)).  The undersigned determines that the claimant's alleged hearing loss, sleep apnea, depression and back pain are non severe impairments.").

[2] Tr. 24 (emphasis supplied).

4

*considering the combined effects of the claimant's impairments with resulting pain and limitations*, she retains the ability to perform a reduced range of light work with the limitations previously noted."[3]  It is therefore unclear whether the ALJ considered claimant's obesity to be a severe impairment.

Even if the ALJ did not consider claimant's obesity to be a separate severe impairment, his failure to do so would not alone warrant reversal of the administrative decision.  The Eleventh Circuit has stated the following with regard to an ALJ's obligations under Step 2 of the sequential process for evaluating Social Security disability claims:

> At step two the ALJ must determine if the claimant has *any* severe impairment.  This step acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two.  *See, e.g., Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also Cantrell v. Bowen*, 804 F.2d 1571, 1573 (11th Cir. 1986); *McDaniel*, 800 F.2d at 1031.

*Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987) (emphasis supplied).  *See also Heatly v. Commissioner of Social Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe.").  The ALJ satisfied his duty at Step Two of identifying

---

[3] Tr. 24-25 (emphasis supplied).

two severe impairments, pulmonary hypertension and diabetes mellitus.

The next question, therefore, is whether the ALJ met his obligation, at Step Three of the sequential evaluation process, to "demonstrate that [he] has considered all of the claimant's impairments, whether severe or not, in combination." *Heatley*, 382 F. App'x at 825 (citations omitted) (alteration supplied).   Social Security regulations state the following with regard to the Commissioner's duty in evaluating multiple impairments:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 1523.  *See also* 20 C.F.R.  §§ 404.1545(e), 416.945(e) (stating that, when the claimant has any severe impairment, the ALJ is required to assess the limiting effects of *all* of the claimant's impairments — including those that are not severe — in determining the claimant's residual functional capacity).

Here, the ALJ explicitly discussed claimant's obesity, finding that there was no indication that it had impacted her musculoskeletal system or general health

sufficiently to cause functional impairments.[4]  The ALJ also made other statements indicating that he had considered the combined effect of all of claimant's impairments.  He stated that claimant did not have an impairment *or combination of impairments* that met or equaled one of the listings.[5]  He also stated that, "[b]ased on the record as a whole, the undersigned finds that even considering the combined effects of the claimant's impairments with resulting pain and limitations, she retains the ability to perform a reduced range of work at the light level of exertion with the limitations previously noted."[6]  Those statements are sufficient to indicate that the ALJ properly considered *all* of claimant's impairments.  *See Wilson v. Barnhart,* 284 F.3d 1219, 1224 (11th Cir. 2002); *Jones v. Dept. of Health and Human Services,* 941 F.2d 1529, 1533 (11th Cir. 1991).  A review of the decision itself indicates that the ALJ discussed claimant's back pain, depression, and anxiety, not just her respiratory problems and diabetes.  Moreover, the ALJ's statements indicate that he followed SSR 02-1P by considering the combined effect of claimant's obesity and other impairments on her ability to perform work-related activities.

## B.    Credibility

Next, claimant asserts that the ALJ's findings about the credibility of her

---

[4] Tr. 24.

[5] Tr. 19.

[6] Tr. 24-25 (alteration supplied).

subjective statements about her limitations were not supported by substantial evidence.  To demonstrate that pain or another subjective symptom renders her disabled, a claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F. 2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  "After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) (citing *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984)).  If an ALJ discredits subjective testimony on pain, "he must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).

Here, the ALJ found that claimant's medically determinable impairments could reasonably be expected to cause the symptoms she alleged, but that claimant's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with a residual functional

capacity to perform a limited range of light work.[7]  The ALJ adequately articulated the reasons for that decision by stating that claimant's allegations were inconsistent with her reported daily activities and unsupported by the medical evidence of record. Even so, claimant asserts that the ALJ erred in evaluating the daily activities claimant reported in her February 2009 Function Report.   Those activities included transporting her daughter to and from school, cleaning, doing laundry, preparing meals, shopping for food and clothes, paying bills, reading, working in the yard, spending time with others, attending church, and caring for her father.[8]  Even though Social Security regulations expressly provide that daily activities *should* be considered in evaluating credibility, *see* 20 C.F.R. § 404.1529(c)(3)(i) (listing "daily activities" first among the factors the Social Security Administration will consider in evaluating a claimant's pain), claimant challenges the ALJ's findings under the Eleventh Circuit's decision in *Lewis v. Callahan,* 125 F.3d 1436 (11th Cir. 1997). There, the Eleventh Circuit disavowed the notion that "participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability." *Id.* at 1441.  Here, the ALJ did not rely solely on claimant's daily activities to determine her disability status.  Instead, he properly evaluated those

---

[7] Tr. 20.

[8] *Id*.

activities in evaluating claimant's credibility. *See Hennes v. Commissioner of Social Security Administration,* 130 F. App'x 343, 348-49 (11th Cir. 2005) (holding that "the degree of Hennes's complaints also were belied by her testimony that she could shop for groceries and cook meals with her husband, put clothing in the washing machine, fold and hang clothing, and crochet") (citing *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir.1987)).[9]  Substantial evidence supports the ALJ's findings.

The ALJ also properly relied upon the medical evidence of record in evaluating claimant's credibility. 20 C.F.R. § 404.1529(c)(1)-(2).  He described medical records that generally reflected multiple complaints but only mild to moderate clinical findings and little indication of functional limitations.[10]  The ALJ's conclusions are supported by substantial evidence of record.  Furthermore, contrary to claimant's assertion, the ALJ did not fail to address her use of supplemental oxygen.[11]

In summary, the ALJ properly evaluated claimant's credibility, and his

---

[9] Claimant also asserts that the ALJ improperly relied solely upon the activities she reported in February 2009.  *See* doc. no. 18 (claimant's brief), at 20 ("The ALJ based his credibility finding [on] Ms. Jones' statements of her daily activities contained in her Function Report-Adult which was completed on February 6, 2009.  (R. 181-91).  However, her Function Report Adult predated the more severe findings of her pulmonary arterial hypertension such as using supplemental oxygen.") (alteration supplied).  The record simply does not support that argument.  To the contrary, the ALJ stated in the administrative decision that, even after the February 2009 Function Report, claimant "continued to report a significant level of activities, which were previously noted and are inconsistent with disabling limitations."  Tr. 24.

[10] Tr. 20-24.

[11] *See* Tr. 22 (noting claimant's oxygen use).

10

conclusions about credibility were supported by substantial evidence.

**C.    Medical Source Opinions**

Claimant also asserts that the ALJ erred in failing to consider the Medical Source Opinion from Dr. Jose Tallaj, one of claimant's treating physicians.  On an unspecified date, Dr. Tallaj completed a form entitled "Physical Charity Care Application Physician Disability Confirmation."[12]  The letter submitted with that form explains that the form was completed as part of claimant's application to participate in a free medical care program at the University of Alabama in Birmingham.[13]  The instructions on the form stated:

> Only complete this form if:
>
> You are pending or have been denied disability benefits but are reporting you are unable to work due to an illness or injury, or if you are temporarily unable to work due to an illness or injury.
>
> Please have your physician answer the following questions in order for us to properly evaluate your charity care application based on your medical condition.  We will need specific information about each of the illnesses, injuries or medical conditions that keep you from working. . . .[14]

Dr. Tallaj responded to the question "What is the major illness, injury, or condition

---

[12] Tr. 251.

[13] Tr. 250.

[14] Tr. 251.

that keeps the patient from working" with "Pulmonary arterial hypertension."[15]  He responded to the question "What is the estimated time frame that you expect the patient to be unable to work?" with "Lifetime."[16]  He did not provide any further explanation of claimant's limitations.  Claimant's attorney also referenced a June 19, 2009 letter from Dr. Tallaj during the administrative hearing.  There does not appear to be a copy of that letter in the record, but claimant attached a copy to her brief.  Dr. Tallaj stated:

> Ms. Jones has been our patient since April of 2004.  Ms. Jones suffers from a devastating disease called pulmonary arterial hypertension, likely familial.  She is currently stable on medical therapy; however, this is a progressive and often lethal disease.  She is quite limited and not physically able to do community service given her cardiopulmonary condition.[17]

The ALJ did not discuss the June 19 letter in his administrative decision.

The Commissioner disputes whether Dr. Tallaj was a treating physician or a one-time examiner, but regardless of that distinction, the ALJ did not err in failing to consider either document from Dr. Tallaj.  Both documents amount to nothing more than the doctor's conclusory assertion that claimant is unable to work and/or do community service because of certain medical conditions.  The ALJ is not required

---

[15] *Id.*

[16] *Id.*

[17] Doc. no. 18, at Exhibit D.

to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 416.927(e).[18] Such opinions carry little to no weight in the disability determination process, and the ALJ's failure to discuss them in his administrative opinion was, if anything, harmless error.[19]

Finally, claimant asserts that the ALJ "failed to evaluate the testimony about frequency of Ms. Jones['] medical appointments."[20] Claimant asserts that the ALJ's failure to discuss claimant's potential absences for medical appointments was error because the "vocational expert was of the opinion that two or more absences from

---

[18] Claimant acknowledges that Dr. Tallaj's statements "could be considered statements regarding issues reserved to the Commissioner," but she nonetheless asserts that "the ALJ is still required to evaluate and consider the medical findings underlying those statements." Doc. no. 18, at 30. There is no support for the latter part of claimant's assertion.

[19] This conclusion holds true for both the undated Charity Care Application form and the June 19, 2009 letter. Technically, whether the June 19 letter should be considered is governed by the standards for remand for consideration of new evidence under Sentence Six of 42 U.S.C. § 405(g), because that evidence was not made a part of the record at any point during the administrative proceedings. Sentence Six remands require a showing that "(1) new, non-cumulative evidence exists; (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result; and (3) good cause exists for the claimant's failure to submit the evidence at the appropriate administrative level." *Carson v. Commissioner of Social Security*, 373 F. App'x 986, 988 (11th Cir. 2010) (citing *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986)). Because the June 19 letter contains only conclusory statements about claimant's ability to perform community service activities, there is no reasonable possibility that it would change the administrative result.

[20] Doc. no. 18, at 28 (alteration supplied).

13

work each month would preclude work."[21]  The court disagrees with claimant because there is no evidence that claimant would miss more than two days of work each month for medical appointments.  According to claimant's count, she attended forty-three medical appointments during the 28-month period between January 15, 2009 and April 21, 2011.[22]  That equates to an average of only 1.53 appointments each month.  Moreover, there is no evidence about the duration of each of claimant's appointments.  Some may have lasted all day; others may have taken much shorter periods of time.  Therefore, the court is not persuaded that the ALJ improperly failed to consider the effect on claimant's potential absences on her ability to perform substantial gainful activity.

## D.    Conclusion

In accordance with all of the foregoing, the court concludes that the ALJ's decision was supported by substantial evidence and in accordance with applicable legal standards.  Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant.  The Clerk is directed to close this file.

DONE this 28th day of January, 2013.

_____

---

[21] *Id.* at 29.

[22] *See id.* at 28-29.

14

United States District Judge